**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MARY A. KENNEDY,**

     **Plaintiff,**

                               **Civil Action 2:19-cv-3980**

  **v.**                         **Chief Judge Algenon L. Marbley**

                               **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Mary A. Kennedy, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 15), Plaintiff's Reply (ECF No. 16), the administrative record (ECF No. 7), and the supplemental administrative record (ECF No. 8). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

1

## I.  BACKGROUND

This appears to be Plaintiff's third application for Supplemental Security Income ("SSI").[1] Plaintiff filed what appears to be her second application for SSI on June 6, 2013, alleging that she had been disabled since January 1, 2012.  (R. at 599.)  At the hearing, she moved to amend her alleged onset date to June 6, 2013, and that motion was granted.  (*Id.*)  This application was denied initially and upon reconsideration.  (*Id.*)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (*Id.*)  Administrative Law Judge ("ALJ") Anne Sharrard held a video hearing on April 8, 2015, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 599, 3889-3936.)  On May 20, 2015, ALJ Sharrard issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 599–617.)[2]  On April 12, 2016, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision.  (R. at 618-24.)  Plaintiff did not appeal this decision.

---

[1] At the hearing on October 22, 2018, Plaintiff's counsel indicated in his opening statement that, "… there's a prior – a couple of prior ALJ decisions but the important one was May 20th of 2015. The one before that's no longer operative because in the 2015 decision the Judge went out and formulated a different RFC finding that there was changes, material changes from the prior Judge's determination. …"  (R. at 570.)

[2] Accordingly, for purposes of Plaintiff's current application, the previous adjudicated period was June 6, 2013 through May 20, 2015, the date of ALJ Sharrard's decision.  *Snead v. Saul*, No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020), *report and recommendation adopted*, No. 1:19CV2754, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020).

Plaintiff filed what, again, appears to be her third application (the instant application) for SSI on September 1, 2016, still alleging that she had been disabled since January 1, 2012.[3]  (R. at 733-38.)  This application also was denied initially and upon reconsideration.  (R. at 644–73.)  Plaintiff again sought a *de novo* hearing before an administrative law judge.  (R. at 674-76.)  ALJ Gregory M. Beatty held a video hearing on October 2, 2018, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 565–95.)  On October 22, 2018, ALJ Beatty issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 465–83.)  On July 23, 2019, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision.  (R. at 1–7.)  Plaintiff then timely commenced the instant action.

## II.   HEARING TESTIMONY

### A.  Plaintiff's testimony

Plaintiff testified at the second administrative hearing on October 2, 2018, that she lived with a friend, but was "just there so [she is] not homeless on the street."  (R. at 573.)  She explained that she no longer drove because she let her license expire.  (R. at 574.)  She stated that she had tried to obtain her GED twice, but she "flunked" the test both times.  (R. at 575.)  Plaintiff was brought to the hearing by her mental health advocate.  (*Id.*)

---

[3] "Regardless of the actual or alleged onset date of disability, an SSI claimant is not entitled to SSI benefits prior to the date the claimant files an SSI application. *See* 20 C.F.R. § 416.335." *Snead v. Saul,* No. 1:19CV2754, 2020 WL 5097580, at *11 (N.D. Ohio Aug. 10, 2020), *report and recommendation adopted*, No. 1:19CV2754, 2020 WL 5096066 (N.D. Ohio Aug. 28, 2020).

Plaintiff testified that she cannot work due to her back, neck and kidneys, "it's hard to breathe, and I'm always sick.  I've been on nine antibiotics this year…" (*Id.* at 576.)  Plaintiff testified that she also suffers from spina bifida, noting that it has gotten worse and that she has trouble even sitting.  (*Id.*)  Plaintiff testified that she takes medication for her pain prescribed by her primary care physician.  She stated that she had been involved in pain management care, but that was over a year prior to the hearing and "pain management didn't want to see [her] no more." (R. at 579.)

When asked about her mental health, Plaintiff testified that she has flashbacks and depression.  She explained that she experiences nightmares and night sweats.  (R. at 580.)  She stated that she felt the medication and counseling help only "a little bit."  (*Id.*)  She testified to getting about two to two and a half hours of sleep a night.  (R. at 587.)

Plaintiff also testified to using an inhaler.  (R. at 580-81.)  She stated that she smokes half a pack of cigarettes a day but that this was down from two and a half packs a day.  (R. at 582.)  Plaintiff stated that she no longer drinks alcohol.  (*Id.*)

Plaintiff testified that, in a typical day, she wakes up, lets out her dog, washes dishes, takes medication, and lies on the couch.  (R. at 582.)  She prepares a sandwich and does light cleaning. (*Id.*)  She goes grocery shopping with help from a friend.  (R. at 583.)

### B.     Vocational Expert Testimony

Lynn S. Smith testified as a vocational expert ("VE") at the October 2, 2018, administrative hearing.  (R. at 590–94.)  The VE testified that a hypothetical individual of Plaintiff's age, education, experience, and vocational profile who retained the residual functional

capacity ("RFC")[4] that ALJ Beatty ultimately assessed could perform jobs such mail clerk (approximately 75,000 jobs nationally); price marker (approximately 1 million nationally); and an office helper (approximately 50,000 jobs nationally). (R. at 591-92.)

When examined by Plaintiff's counsel, the VE testified that "from my experience," if Plaintiff was limited to brief interaction with coworkers and supervisors, there would no jobs available. (R. at 592.)

### III.    MEDICAL RECORDS AND OPINION

### A.    Yakov Sherk, M.D./ Mental Health Services for Clark and Madison Counties

Plaintiff was assessed for mental health treatment through Mental Health Services for Clark and Madison Counties on May 22, 2017. (R. at 2849-63.) Plaintiff initially reported that she was depressed, anxious, and suffered from insomnia. Plaintiff noted she had been trying to get social security for over 10 years. Plaintiff reported "she feels hopeless a lot of the time, feels agitated because she can't do what she wants." (R. at 2849.) She denied alcohol or substance use. Plaintiff was assessed with a dysthymic disorder. (R. at 2863.) Counseling was recommended. (*Id.*)

Plaintiff was seen by Dr. Sherk on October 19, 2017. (R. at 2875-2879.) His diagnosis was dysthymic disorder and persistent depressive disorder. (R. at 2877.) He noted her strengths as "[a]bility to comply with med regimen, can express self verbally, [c]ompliant with treatment recommendations, [a]bility to be goal directed/positive, good support system." (R. at 2878.) Plaintiff saw Dr. Sherk again on November 14, 2017. (R. at 2867-2871.) His assessment of

---

[4] A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1).

Plaintiff's strengths and his diagnosis of her conditions were the same. (R. at 2869, 2870.) Dr. Sherk saw Plaintiff again on December 19, 2017, with the identical assessments. (R. at 3270-3273.) These treatment records from these three visits show that he prescribed medication including Prazosin, Vistaril and Latuda. (R. at 2867-2871, 2875-2879, 3270-73.) Mental status examinations were generally normal aside from an anxious mood. (R. at 2869, 2877, 3271.)

Following these three appointments, on January 3, 2018, Dr. Sherk completed a Medical Source Statement – Mental Capacity. (R. at 3088-3089.) He opined that Plaintiff was markedly impaired in her abilities to: recognize a mistake and correct it; identify and solve problems; sequence multi-step activities; use reason and judgment to make work-related decisions; cooperate with others; initiate or sustain conversation; keep social interactions free of excessive irritability, sensitivity, argumentativeness or suspiciousness; work at an appropriate and consistent pace; change activities or work settings without being disruptive; sustain an ordinary routine and regular attendance at work; respond to demands; distinguish between acceptable and unacceptable work performance. (*Id.*) Dr. Sherk stated that Plaintiff had marked to extreme impairment in her ability to ask for help when needed; handle conflicts with others; respond to requests, suggestions, criticism, correction and challenges; complete tasks in a timely manner; and be aware of normal hazards and take appropriate precautions. (*Id.*) Dr. Sherk further opined that Plaintiff was extremely impaired in her abilities to ignore or avoid distractions while working; work a full day without needing more than the allotted number or length of rest periods during the day; adapt to changes; manage one's psychologically based symptoms; set realistic goals; and make plans for

6

oneself independently of others.  (*Id.*)  Dr. Sherk listed Plaintiff's diagnoses as post-traumatic

stress disorder (PTSD), dysthymic disorder, and major depressive disorder.  (R. at 3089.)

Plaintiff continued to receive treatment at Mental Health Services for Clark and Madison

Counties through medication and counseling.  (R. at 3231-69, 3576-88.)  Mental status

examinations continued to show normal judgment and thought content.  Plaintiff was dressed

appropriately and was well-groomed.  Her recent memory was intact.  She reported a good

appetite and denied medication side effects.  Plaintiff also reported that she relied on her mother,

daughter and a friend as support, communicating with them daily.  (R. at 3256-69, 3583-86.)  In

April 2018, Plaintiff told her counselor that, "[s]he will kill herself if she doesn't get disability."

(R. at 3240.)   In June 2018, Plaintiff reported that she was not taking the medication Dr. Sherk

prescribed fearing "permanent side effects or allergic reactions."  (R. at 3233.)  In July 2018,

Plaintiff stated that after she gets disability benefits, she will likely move to Florida and help her

mother because her mother was not doing well physically.  (R. at 3580.)

### B.     State Agency Review

#### 1.     Physical RFC

Plaintiff was seen by Dr. Robert Whitehead on December 19, 2016, for a consultative

examination.  (R. at 627; 1667-1670.)  Dr. Whitehead stated that Plaintiff would only be able to

perform jobs that were sedentary and allowed her to sit and stand as needed for comfort.  (*Id.*)  He

further stated that she would need a ten-pound lifting restriction and could not perform bending

on repetitive pushing and pulling.  (*Id.*)  Edmond Gardner, M.D. reviewed Plaintiff's medical

records, including those from Dr. Whitehead. on January 9, 2017.  Dr. Gardner found Dr.

7

Whitehead's opinion to be consistent with the record and assigned it great weight.  (R. at 625-36.)
Further, Dr. Gardner noted that the RFC "is an adoption of the ALJ decision dated 5/20/15" and
"is being adopted under AR Ruling 98-4."  (R. at 636.)  Steve McKee, M.D., reviewed Plaintiff's
medical record upon reconsideration on March 15, 2017 and affirmed Dr. Gardner's assessment,
also adopting the May 2015 ALJ decision.  (R. at 655.)

### 2.    Mental RFC

Plaintiff was seen by Sudhir Dubey, Ph.D. on November 28, 2016, for a consultative
examination.  (R. at 628; 1659-1665.)   At this examination, Plaintiff reported a past substance
abuse history, indicating that she had stopped drinking 10 years prior but had consumed 12 beers
seven days per week. (R. at 1660.)  Dr. Dubey stated that, in a work setting Plaintiff would be
able to understand, remember and carry out multi step instructions independently; would be able
to maintain persistence and pace to remember and carry out simple instructions independently and
would be able to maintain persistence and pace to remember and carry out multi-step instructions
independently.  (*Id.*)  He further stated that she would have some issues dealing with co-workers
and supervisors due to possible problems stemming from mood-related behavior, leading to
associated frustration.  Additionally, he stated that she would have some issues dealing with work
pressure due to possible mood related problems and substance abuse issues, leading to frustration
for her, co-workers, and supervisors.  (*Id.*)

On December 13, 2016, Vicki Warren, Ph.D., reviewed Plaintiff's record and assessed her
mental condition, giving Dr. Dubey's opinion great weight.  (R. at 625-38.)  Dr. Warren
concluded that Plaintiff could carry out multistep instructions independently and perform a job

that involves superficial routine interactions. In addition, Dr, Warren noted that Plaintiff may need advance notice of changes in her work setting and time to adapt to those changes. (R. at 637-38.) Dr. Warren did not adopt the prior ALJ decision from May 2015, finding that there was new and material evidence regarding the Plaintiff's mental impairments. (R. at 638.) Specifically, Dr. Warren noted that Plaintiff had a new diagnosis of alcohol use disorder that is in remission. (*Id.*) Tonya Hoyle, Psy.D., reviewed Plaintiff's medical record upon reconsideration on March 15, 2017 and affirmed Dr. Warren's assessment. (R. at 656-57.)

## IV. ADMINISTRATIVE DECISIONS

### A. First Administrative Decision Dated May 20, 2015

On May 20, 2015, ALJ Sharrard issued her decision. (R. at 596-612.) At step one of the sequential evaluation process,[5] the ALJ found that Plaintiff had not engaged in substantially gainful activity since June 6, 2013, the application date. (R. at 601.) The ALJ found that Plaintiff

---

[5] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

9

had the severe impairments of degeneration of the lumbar spine and sacrum; degenerative

changes of the cervical spine; history of chronic obstructive pulmonary disease (COPD);

osteoarthritis; depressive disorder; and an anxiety disorder. (*Id.*) She further found that Plaintiff

did not have an impairment or combination of impairments that met or medically equaled one of

the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 602.) At

step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that
> the [Plaintiff] has the residual functional capacity to perform less than the
> full range of light work as defined in 20 CFR 416.967(b). Specifically, the
> [Plaintiff] can lift or carry up to twenty pounds occasionally ten pounds
> frequently, as well as sit, stand, or walk for up to six hours each in an eight-
> hour workday. Further, the [Plaintiff] can occasionally climb ramps or
> stairs, stoop, crouch, and balance but never climb ladders, ropes, or
> scaffolds. The [Plaintiff] must avoid concentrated exposure to pulmonary
> irritants. The [Plaintiff] can frequently handle and finger with the dominant
> (right) upper extremity. The [Plaintiff] can perform simple, routine,
> repetitive tasks in a low stress job, which is defined as having only
> occasional changes in the work setting. The [Plaintiff] cannot perform
> assembly line work with production quotas. Finally, the [Plaintiff] can have
> brief and superficial interaction with supervisors and coworkers but no
> interaction with the general public.

(R. at 604.)

ALJ Sharrard determined that Plaintiff had no past relevant work. (R. at 610.) ALJ

Sharrard went on to find that Plaintiff was capable of performing jobs existing in significant

numbers in the national economy. (R. at 611.) She therefore concluded that Plaintiff was not

disabled under the Social Security Act. (R. at 612.)

**B.      Second Administrative Decision Dated October 22, 2018**

On October 22, 2018, ALJ Beatty issued his decision. (R. at 468-77.) ALJ Beatty

found that Plaintiff had not engaged in substantially gainful activity since September 1, 2016, the application date. (R. at 470.) The ALJ found that Plaintiff had the severe impairments of spina bifida; COPD; depressive disorder; PTSD; alcohol use disorder in remission; lumbar degenerative disc disease. (*Id.*) He further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> After careful consideration of the entire record, I find that the [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: limited to frequent fingering and feeling with the right hand; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch, and crawl; can never work at unprotected heights or around moving mechanical parts; never operate a motor vehicle; should avoid concentrated exposure to dusts, fumes, odors, gases, pulmonary irritants; avoid concentrated exposure to extreme cold and extreme heat. She can perform simple routine tasks but not at a production rate pace. She can make simple work-related decisions. She can have interaction with supervisors, co-workers and the public on a superficial basis. She can tolerate few changes in a routine work setting.

(R. at 472.)

ALJ Beatty noted that in reaching his findings, he considered the prior ALJ decision. (R. at 473.) ALJ Beatty then noted when adjudicating a subsequent disability claim involving an unadjudicated period, the Agency considers the facts and issues de novo in determining disability with respect to the unadjudicated period. (*Id.*) The ALJ also acknowledged that the Agency may not make a different finding in adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim unless new and additional evidence or changed circumstances provide a basis for a different RFC finding. (*Id.*) ALJ Beatty

then noted, "there is new and material evidence pertaining to the unadjudicated period and therefore, I am not bound to adopt the findings of the prior ALJ regarding the [Plaintiff]'s residual functional capacity." (*Id.*)

In making the above determination, the ALJ afforded some weight to the opinions from the stage agency psychologists. (R. at 476.) ALJ Beatty did not agree with the state agency physicians, Drs. Gardner and McKee's findings that it is proper to adopt the prior ALJ's RFC regarding Plaintiff's exertional limitations. (*Id.*)

As to treating psychiatrist Dr. Sherk, the ALJ found "that this opinion has no probative value because it is without support from objective evidence." (R. at 475.) The ALJ determined that, "this check-list style form appears to have been completed as an accommodation to the [Plaintiff] and includes only conclusions regarding functional limitations without any rationale for those conclusions." (*Id.*)

Relying on the VE's testimony, the ALJ found that Plaintiff can perform jobs that exist in significant numbers in the national economy. (R. at 476-77.) He therefore concluded that Plaintiff was not disabled under the Social Security Act, since September 1, 2016, the date the application was filed. (R. at 477.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of

the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.    ANALYSIS

Plaintiff puts forth two contentions of error:

(1)  The Administrative Law Judge's finding as to Plaintiff's residual functional capacity is not supported by substantial evidence as the ALJ failed to properly consider findings from a prior Administrative Law Judge decision pursuant to

> *Drummond v. Commissioner of Social Security,* 126 F3d. 837 (6th Cir. 1997), and
> Acquiescence Ruling ("AR") 98-4(6); and
>
> (2)  The Administrative Law Judge failed to properly weigh all opinion evidence in
> the record in accordance with Agency regulations and policy. As a result, the
> Administrative Law Judge's findings and conclusion are not supported by
> substantial evidence.

More specifically, Plaintiff argues that the ALJ failed to explain why he did not adopt certain limitations from the prior ALJ's decision.  The particular limitations identified by Plaintiff include frequent "handling" with the right hand, "brief" interactions with supervisors and coworkers, and no interaction with the general public.  Further, Plaintiff argues that ALJ Beatty erred in weighing the opinion of her treating psychiatrist, Yakov Sherk, M.D.  (ECF Nos. 9, 16). The Undersigned considers these issues in turn.

### A.  **Plaintiff's RFC and *Drummond***

Plaintiff argues that the ALJ failed to consider the previous ALJ's findings pursuant to *Drummond v. Commissioner of Social Security,* 126 F3d. 837 (6th Cir. 1997), and Acquiescence Ruling ("AR") 98-4(6).  According to Plaintiff, although the ALJ cited new evidence allowing him to make a different finding as to Plaintiff's physical and mental residual functional capacities, he never explained why that evidence was material and warranted such a change. (ECF No. 9 at 9.) Relying on the fact that the current vocational expert testified that a previous restriction – specifically, the limitation to brief and superficial interaction with supervisors – is work-preclusive, Plaintiff contends that, at a minimum, the case should be remanded for further consideration of whether there is new and material evidence warranting a departure from the prior ALJ's finding.  (*Id.* at 11.)  Plaintiff's argument is not well-taken.

14

The United States Court of Appeals for the Sixth Circuit previously held that principles of *res judicata* apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997). The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition.").

Thereafter, the Sixth Circuit clarified its decision in *Drummond* in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018).  The Sixth Circuit explained that principles of

"consistency between proceedings and finality with respect to resolved applications" protected by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id*. at 931. The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications."   Instead, the Court emphasized that "[f]resh review is not blind review."  *Id*. at 934.  In short, the Sixth Circuit therefore found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard."  *Id*. at 933–34.

In Section 1-5-4-62 of the Social Security Administration's Hearings, Appeals and Litigation Law Manual (HALLEX), guidance is provided about how to implement the *Drummond* ruling. In relevant part, that guidance provides that a finding of improvement must be based on evidence that is both "new" and "material." In this context, "new" simply means evidence not presented to the prior adjudicator. "Material" evidence is evidence that "both differs from that presented in the prior claim and warrants a finding different than that made in the decision on the prior claim." Additionally, the ALJ's decision "must refer to the AR [Acquiescence Ruling 98-4(6)] and include rationale indicating why any new evidence is or is not material to a particular

16

finding." *Blaney v. Colvin*, No. 2:15-CV-2449, 2016 WL 3679983, at *5 (S.D. Ohio July 12, 2016)(citing HALLEX  Section 1–5–4–62, at www.ssa.gov/OPHome/hallex/hallex/html.)

Although Plaintiff argues that the ALJ failed to explain the materiality of the new evidence relating to both her physical and mental impairments, the issue of her mental impairments appears to be her primary concern.  The materiality of Plaintiff's new mental health evidence considered by the ALJ here is obvious. The previous ALJ, in formulating Plaintiff's mental RFC, did not have the benefit of mental health treatment records.  As that ALJ stated:

> In terms of the claimant's alleged mental health impairments, the absence of any meaningful mental health treatment undermines the credibility of the claimant's allegations that she cannot work due to her anxiety and depression.  The medical evidence of record contains no psychological treatment by therapy or medication. The claimant's diagnosis of anxiety disorder and depressive disorder at the conclusion of the consultative examination has not been followed with any later treatment seeking behavior, suggesting the claimant's condition is not disabling as she has alleged.  Moreover, the claimant's results of objective testing at the consultative examination were generally normal.  (C3F).  Nevertheless, the claimant's residual functional capacity has been reduced to account for the claimant's credible reports of difficulty getting along with others and inability to manage stress or complex tasks.  These restrictions are sufficient to account for the claimant's mental health impairments, and the record does not support further limitations.

(R. at 607.)

The current ALJ, however, plainly considered the new evidence pertaining to Plaintiff's mental impairments and found that Plaintiff's RFC needed to be updated accordingly.  For example, he noted that Plaintiff sought mental health treatment in 2017 and had been attending counseling regularly since May 2017.  (R. at 474, 475 citing R. at 2836-2838; 2849-2885; 3231-3273; 3576-3588.)  Further, in reliance on these mental health treatment records, he cited Plaintiff's denial of alcohol or substance use, the fact that she

was receiving medication for her depression, reports of her normal judgment and thought content, intact memory, and the fact that she relied on family and a friend, communicating with them daily.  (*Id.* citing 2849-2885; 3231-3273.)  He also noted her reports of "not want[ing] to go on if she did not receive disability benefits" and her desire to move Florida to help her mother if she did get benefits.  (*Id.* citing 3576-3588)

Plaintiff makes the same complaint with respect to her physical RCF.  Plaintiff notes that the 2015 RFC only allowed for frequent fingering and frequent handling with the right upper extremity (R.at  604), while the 2018 RFC imposed no limitation on handling with the right upper extremity but did impose an additional limitation on frequent feeling with the right upper extremity (R. at 472).  Again, however, the ALJ considered the new evidence pertaining to Plaintiff's physical impairments and found that Plaintiff's RFC needed to be revised accordingly. For example, the ALJ considered that, since the prior ALJ decision, Plaintiff had received pain management care for her back pain and routinely reported that her medication helped control her pain and kept her active.  (R. at 474 citing R. at 1715-1763.)[6]  He further noted that she was dismissed from the pain management practice in January 2017 due to an inconsistency in her urine drug screen.  (R. at 474 citing R. at 3310.)  Additionally, he discussed that, following this dismissal, Plaintiff established treatment with a new primary care provider who noted on her first visit that her claim of pain was disproportionate to the examination results.  (*Id.* citing R. at 3311.) Further, he noted that Plaintiff reported to her new provider's office that the pain management

---

[6] Although the ALJ cites to Exhibit B13F in his decision, this appears to be a typo.  The records the ALJ relies on are found at Exhibit D13F.  This correct numbering is consistent with the other citations in the record.

practice would resume her treatment if she obtained mental health treatment.  (*Id.* citing R. at

3380.)  He also cited records from 2017 indicating that Plaintiff sought pain medication elsewhere

and expressed "extreme displeasure" when she did not receive it; took other pain medications as

directed with no reported side effects, and by June 2018 still had not resumed treatment with the

pain management practice but was receiving medication from her then current provider.  (*Id.*

citing R. at 3611, 3382, 3537.)

  A fair reading of Plaintiff's statement of errors indicates that Plaintiff does not dispute that

the ALJ accurately summarized the evidence of her post-2015 treatment for both her physical and

mental impairments. She does not argue that the record would not support a finding of changes in

her conditions.  Rather, her argument is that, because the ALJ offers no specific explanation for

this departure by citation to new and material evidence in the decision, the 2018 RFC assessment

is not supported by substantial evidence.  (ECF No. 16 at 3.)  As the above discussion reveals,

however, this characterization of the ALJ's decision is simply inaccurate.

  The ALJ correctly articulated the governing legal standard and stated that his decision was

based on new evidence.  (R. at 473.)  His review of the post-2015 records, which he cited as the

basis of his decision, shows that he gave various reasons for reaching a different conclusion as to

Plaintiff's  physical and mental limitations in the RFC.  Further, he did so in a way that permits

the Court to understand the basis for his ruling and engage in meaningful review.   Further, to the

extent that Plaintiff has raised the issue of substantial evidence, as explained above, the ALJ's

decision is supported by such evidence. Moreover, as noted, the issue on which Plaintiff has

focused is her alleged inability to have more than brief and superficial interaction with

supervisors. But the ALJ specifically cited to treatment records showing that she had begun

regular mental health counseling and was treating her depression with medication. In short, the

Plaintiff's disagreement with the ultimate conclusion reached by the ALJ does not mean that the

ALJ did not conduct a proper *Drummond* analysis. Accordingly, there is no merit to Plaintiff's

first contention of error.

### B. Dr. Sherk's Opinion

Plaintiff also faults the ALJ's evaluation of the opinion from Plaintiff's treating

psychiatrist, Dr. Sherk. The Undersigned disagrees and concludes that the ALJ's conclusion is

supported by substantial evidence.

The ALJ must consider all medical opinions that he or she receives in evaluating a

claimant's case. 20 C.F.R. § 416.927(c). The applicable regulations define medical opinions as

"statements from physicians and psychologists or other acceptable medical sources that reflect

judgments about the nature and severity of your impairment(s), including your symptoms,

diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental

restrictions." 20 C.F.R. § 416.927(a)(2).

The ALJ generally gives deference to the opinions of a treating source "since these are

likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a

patient's] medical impairment(s) and may bring a unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone. . . ." 20 C.F.R. § 416.927(d)(2);

*Blakley*, 581 F.3d at 408. If the treating physician's opinion is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other

20

substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight." 20 C.F.R. § 404.1527(d)(2).

If the ALJ does not afford controlling weight to a treating physician's opinion, the ALJ must meet certain procedural requirements. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Specifically, if an ALJ does not give a treating source's opinion controlling weight:

> [A]n ALJ must apply certain factors—namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source—in determining what weight to give the opinion.

*Id.*

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] your treating source's opinion." 20 C.F.R. § 416.927(d)(2). Accordingly, the ALJ's reasoning "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 550 (6th Cir. 2010) (internal quotation omitted). The United States Court of Appeals for the Sixth Circuit has stressed the importance of the good-reason requirement:

> "The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases," particularly in situations where a claimant knows that his physician has deemed him disabled and therefore "might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule. *See Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004).

*Wilson*, 378 F.3d at 544–45. Thus, the reason-giving requirement is "particularly important when the treating physician has diagnosed the claimant as disabled." *Germany-Johnson v. Comm'r of Soc. Sec.*, 312 F. Appx 771, 777 (6th Cir. 2008) (citing *Rogers*, 486 F.3d at 242).

There is no requirement, however, that the ALJ "expressly" consider each of the *Wilson* factors within the written decision. *See Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010) (indicating that, under Blakley and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(c)(2) for weighing medical opinion evidence within the written decision).

Finally, the Commissioner reserves the power to decide certain issues, such as a claimant's residual functional capacity. 20 C.F.R. § 404.1527(e). Although the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(e); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007).

Here, the parties do not dispute that Dr. Sherk is a treating physician[7] and that his opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and

---

[7]Although the ALJ recognized Dr. Sherk as a "treating physician," the Undersigned has some doubt as to whether he qualifies as such for purposes of social security regulations. A treating source must have "an ongoing treatment relationship with" the claimant, and the frequency of treatment must be "consistent with accepted medical practice" for the claimant's condition. 20 C.F.R. §§ 404.1502 and 416.902. *Strouse v. Berryhill*, No. 4:18CV00099, 2018 WL 7079530, at *15 (N.D. Ohio Dec. 10, 2018), *report and recommendation adopted sub nom. Strouse v. Comm'r of Soc. Sec.*, No. 4:18CV00099, 2019 WL 1577930 (N.D. Ohio Apr. 12, 2019) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 273 (6th Cir. July 13, 2015). "Precedent in this Circuit suggests a physician who treats an individual only twice or three times does not constitute a treating source." *Id. citing Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506–07 (6th Cir. 2006) ("Depending on the circumstances and the nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship"); *Kepke v. Comm'r of Soc. Sec.,*

laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the

Plaintiff's] case record. . . ." 20 C.F.R. § 404.1527(d)(2).  The ALJ addressed Dr. Sherk's opinion

as follows:

> The claimant's treating psychiatrist concluded that the claimant has limitations in
> her domains of functioning from PTSD, dysthymic disorder and major depressive
> disorder.  The "check-marked" limitations range from moderate to extreme (D23F).
> Dr. Yakov Sherk relates in the treatment notes that the claimant gave him the form
> to complete and that he completed it at her request (D30F).  Accordingly, this
> checklist-style form appears to have been completed as an accommodation to the
> claimant and includes only conclusions regarding functional limitations without any
> rationale for those conclusions.  I find that this opinion has no probative value
> because it is without support from the objective evidence.

(R. at 475.)

The ALJ's discussion, assigning Dr. Sherk's opinion "no" weight, is notably succinct.  It

focuses, in part, on the checklist nature of the form on which Dr. Sherk provided his opinion and

the fact that he provided it at Plaintiff's request.  Checklist opinions are not *per se* unreliable, but

it is not improper for an ALJ to take into consideration the format of a medical opinion, especially

in light of other factors in the record that signal unreliability. *Kepke v. Comm'r of Soc. Sec.*, 636

F. App'x 625, 630 (6th Cir. 2016).  The Sixth Circuit has held that "an ALJ properly discounted a

treating source's questionnaire because the source 'failed to provide any explanation for his

responses.'"  *Id.* (quoting *Price v. Comm'r of Soc. Sec. Admin.,* 342 F. App'x 172, 176 (6th

---

636 F. App'x 625, 629 (6th Cir. 2016).  Here, the record appears to indicate that Dr. Sherk saw
Plaintiff on only three occasions prior to authoring his opinion, although he did see Plaintiff on
occasion afterward.  Thus, it may be questionable whether he qualified as a "treating physician" at
the time of his opinion.

Cir.2009)). Dr. Sherk's checklist opinion did not provide an explanation for his findings and the ALJ did not err in discounting it on this ground.

At the same time, the ALJ's additional explanation for heavily discounting Dr. Sherk's opinion is fairly described as conclusory and may well fall short of the standard of providing "good reasons" for discounting a treating physician opinion under 20 C.F.R. § 416.927(c)(2):

> Even when inconsistent with other evidence, a treating source's medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. §§ 404.1527 and 416.927. [*Blakley*, 581 F.3d at 408.] Put simply, it is not enough to dismiss a treating physician's opinion as "incompatible" with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.

*Friend*, 375 F. App'x at 552. In *Friend*, the plaintiff's treating physician completed a physical functional capacity assessment form indicating that the plaintiff could only stand or walk one hour per eight-hour day. *Id.* at 545. The ALJ rejected his opinion in favor of the opinion of a reviewing physician, reasoning that " 'the testimony of [the treating physician] which would allow the claimant to stand/walk for one hour [at a] time to a total of six hours in an eight hour workday, is more consistent with the objective clinical findings,' and 'there is no basis for [the treating physician's] conclusion that the claimant can stand/walk for only one hour in a day.' " *Id.* at 551. The Sixth Circuit held that the ALJ's explanation was insufficient to satisfy the reasons-giving requirement. *Id.* In particular, the Court reasoned that the ALJ failed to identify, let alone discuss, the particular "objective clinical findings" he found inconsistent with the treating-source opinion. *Id.* The Court found that, even if it is inconsistent with other evidence, a treating source's

medical opinions remain entitled to deference and must be weighed using the factors provided in 20 C.F.R. § § 404.1527 and 416.927. *Id.* at 551-552.

In *Wilson*, however, the Sixth Circuit considered three possible scenarios that could lead the Court to a finding of harmless error even when the ALJ failed to articulate good reasons for not assigning controlling weight to a treating physician's opinion. 378 F.3d at 547. First, the Court indicated that harmless error might occur "if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it. . . ." *Id*. Second, the Court noted that if the ALJ's decision was "consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant." *Id*. Finally, *Wilson* considered the possibility of a scenario "where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Id*.

In *Hall v. Commissioner of Social Security*, the Sixth Circuit elaborated on how an ALJ might meet the goal of § 1527(d)(2) without complying with the procedural requirements, explaining as follows:

> As applied to this case, the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general. Such analyses would perhaps adequately address Dr. Caudill's opinion about Hall's back pain by indirectly attacking the "supportability" of the doctor's opinion, § 404.1527(d)(3), or the "consistency" of his opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, see § 404.1527(d)(2). However, it is critical that, when reviewing the ALJ's reasoning for this purpose, we remember the goals of the procedural safeguard. We are reviewing the 1998 decision to see if it implicitly provides sufficient reasons for the rejection of Dr. Caudill's opinion regarding Hall's back, *see Wilson*, 378 F.3d at 544–45 (discussing purposes of treating-source

25

regulations), not merely whether it indicates that the ALJ did reject Dr. Caudill's opinion.

*Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005) (footnotes omitted).

Thus, "the equivalent of good reasons for not adopting a treating source's opinion could perhaps be found in an ALJ's analysis of the ailment addressed by the opinion" or in the ALJ's analysis of the treating physician's other opinions. *Id.* at 465. Indeed, "[a]n ALJ may accomplish the goals of th[e] procedural requirement by *indirectly* attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) (emphasis in original) (citing *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470–72 (6th Cir. 2006); *Hall*, 148 F. App'x at 464–65). In determining whether the ALJ indirectly attacked the treating physician's opinion, "courts look to the ALJ's decision itself, and not other evidence in the record." *Coldiron*, 391 F. App'x at 440.

Here, a fair reading of the ALJ's decision as a whole, reveals such an indirect attack on Dr.Sherk's opinion, rendering harmless any failure on the ALJ's part to more directly meet the requirements of 20 C.F.R. § 416.927(c)(2). Specifically , the ALJ reasonably considered other record evidence that tended to contradict Dr. Sherk's 's opinion regarding the severity of Plaintiff's limitations. Substantial evidence supports this conclusion. For example, the ALJ noted Plaintiff's treatment with medication; intact memory and appropriate appearance; daily communication with others; and her desire to move to Florida to help her mother. (R. at 474 citing R. at 2849-2885; 3231-3273; 3576-3588.) He cited her logical thought process, lack of issues with comprehension, remembering or concentration and the fact that she was independent in her activities of daily living. (R. at 474 citing R. at 1658-1666.) The ALJ also relied on Dr.

Dubey's observations from his consultative examination that Plaintiff's "self-report and general interactional style were internally inconsistent with the information she provided during the course of the interview." (*See* R. at 1662 - 1663.) In summary, the ALJ explained that he saw instances of Plaintiff being "misleading in her statements and presentation at provider appointments, consultative examinations and hearing testimony." (R. at 476.) He noted that, although these inconsistencies may not be intentional, they "suggest that the information provided by [Plaintiff] generally may not be entirely reliable." (*Id*.)

Plaintiff does not contend that the ALJ mischaracterized this evidence. Rather, her argument here is that the ALJ failed to consider other evidence in the record which she contends supports Dr. Sherk's opinion. For example, Plaintiff argues that the record indicates that on June 8, 2018, she presented with a high level of psychomotor agitation (Tr. 3231); on May 11, 2018, therapy records indicate she had increased agitation, psychomotor movement and it was hard for her to concentrate and make decisions (Tr. 3234); she was noted to be easily distracted with circumstantial thought content and an anxious affect on January 30, 2018; she was noted to have an irritable affect previously on December 19, 2017. (Tr. 3271); she was easily distracted and anxious during a June 25, 2018, visit (Tr. 3584); and moderate psychomotor agitation, rapid speech and thought process were noted on July 13, 2018, at which time her therapist suggested an increased level of care to bi-weekly sessions was indicated. (Tr. 3581) (ECF No. 16 at 6.)

Notably, all but one of these records are dated after Dr. Sherk's opinion. Moreover, in essence, Plaintiff's argument on this point is that, in evaluating the weight to assign to Dr. Sherk's opinion, the ALJ should have weighed certain evidence more heavily in his analysis. The law in the Sixth Circuit is clear that a court cannot reweigh evidence considered by the ALJ.

Consequently, the Court declines to do so here. *See Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013) (internal quotations and citations omitted) ("Here, the [plaintiff] asks us to reweigh the evidence and substitute our judgment for that of the ALJ. We cannot do so. Even if we would have taken a different view of the evidence were we the trier of facts, we must affirm the ALJ's reasonable interpretation.").  Even if there is substantial evidence or indeed a preponderance of the evidence to support a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 477 (6th Cir. 2003). Here, the ALJ's findings are supported by substantial evidence within his "zone of choice." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

In sum, Plaintiff's second contention of error is without merit.

## VII.    CONCLUSION

From a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex*

*Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation).  Even when timely objections are filed, appellate

review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994

(6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the

issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).


Date:   January 12, 2021                          /s/ *Elizabeth A. Preston Deavers*
                                                  Elizabeth A. Preston Deavers
                                                  United States Magistrate Judge